IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUEL A. ALERS and         :
DENISE SZUSTOWICZ,         :      CIVIL ACTION
                                   :
        Plaintiffs,         :      NO. 08-4745
                                   :
     v.                 :
                                   :
CITY OF PHILADELPHIA, *et al.,*      :
                                   :
        Defendants.      :

## MEMORANDUM

**Jones, II, J.**                                               **January 24, 2013**

In their Second Amended Complaint, Plaintiffs allege violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) 42 U.S.C. § 1983; (3) the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"); (4) the Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.* ("PHRA"); and (5) the Pennsylvania Minimum Wage Act, 43 P.S. § 333 *et seq.*("PMWA").  Plaintiffs also bring a state law claim for intentional infliction of emotional distress ("IIED").[1]  Now before this Court is Defendants' Motion for Summary Judgment ("Defs. Mot.Summ. J."), including their Statement of Undisputed Material Facts ("Defs. SOF") (Dkt. No. 62), as well as Plaintiffs' opposition brief ("Pls. Opp.") and factual counterstatement ("Pls. SOF") (Dkt. No. 68), Defendants' Reply (Dkt. No. 69), and Plaintiffs' Sur-Reply (Dkt. No. 73).  For the reasons set forth below, Defendants' Motion will be GRANTED in part and DENIED in part.

---

[1]On August 27, 2009, this Court granted Defendants' Motion to Dismiss in part (Dkt. Nos. 19 and 25), eliminating certain claims from Plaintiffs' First Amended Complaint (Dkt. No. 18).  On September 8, 2009, Plaintiffs filed their Second Amended Complaint (Dkt. No. 26), which Defendants answered on September 28, 2009 (Dkt. No. 28).

## I.   FACTUAL BACKGROUND

The Court recites the undisputed material facts as viewed in the light most favorable to Plaintiffs; while Plaintiffs assert a number of disputes of material fact, upon close examination, the Court does not find such to exist in most of the cited instances.   Nevertheless, where Plaintiffs have claimed that a particular material fact is indeed in genuine dispute, the Court will address such assertion. If the Court does not discuss a fact at all, it is because the Court has concluded that such fact is irrelevant or immaterial and thus not worthy of discussion.

### A.   PLAINTIFF ALERS

Plaintiff Miguel A. Alers, a Hispanic male, serves the City of Philadelphia as a police detective.   Defendants Commissioner Charles Ramsey, Deputy Commissioner Jack Gaittens, Inspector Christopher Flacco, Captain Carol Abrams, Captain Sharon Seaborough, Sergeant Mark Jones, Detective Thomas Hood, and Detective Robert Kerwin are also employees of the City of Philadelphia Police Department ("PPD").   Defendant Lieutenant Robert Brown was an employee of PPD until his retirement in 2010.[2]   The City of Philadelphia itself is also named as a Defendant.

On or about October 9 and 10, 2005, Alers was assigned to the Central Detectives Unit ("CDU"), where he was the only Hispanic employee working his designated shift.   (Defs. SOF ¶ 13.)   In what seem to have been characterized as pranks, Kerwin and Hood turned Alers' desk around and raised it up on milk crates, elevated his desk chair on a phone book, and moved his coat hook higher up on the office wall.   (Defs. SOF ¶¶ 28-29.)   They also glued coins and a battery to Alers' desk.   (Defs. SOF ¶ 30.)   Alers asked Kerwin and Hood to stop.   (Defs. SOF ¶ 31.)   Alers reported the conduct to Seaborough, who took no action.   (Defs. ¶ 41.)   Alers also

---

[2]Defendant Ramsey is an African-American male.  Defendants Gaittens, Flacco, Jones, Hood, Kerwin and Brown are white males.  Defendants Seaborough and Adams are African-American females.

reported to Brown and Seaborough that his handgun was missing and had been taken from his desk.  (Pls. SOF ¶ 46.)  While Alers was initially charged by Seaborough with violating the PPD's disciplinary code relating to negligent care of Department property by failing to secure his handgun adequately, Ramsey ultimately withdrew the charge.  (Defs. SOF ¶ 51.)

Thereafter, Alers claims he was denied several overtime opportunities made available to his peers, and his compensation for approved overtime was initially delayed.  (Pls. SOF ¶ 59.)[3] On November 26, 2006, Alers filed a complaint of discrimination with the PPD Equal Employment Opportunity ("EEO") Unit.  (Defs.SOF ¶ 71.)  Following his EEO discrimination complaint, he was reprimanded for entering his own vacation time, although he had never been reprimanded for doing so prior to filing his complaint.  (Pls. SOF ¶ 60.)  On January 7, 2007, he filed a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  (Defs. SOF ¶ 71.)[4]  Alers requested a transfer from the CDU on November 1, 2007.  (Defs. SOF ¶ 65.)

## B.    PLAINTIFF SZUSTOWICZ

Plaintiff Denise Szustowicz ("Szustowicz"), a white Polish female, is also a PPD detective, and has twice been named the Department's "Detective of the Year."  (Pls. SOF ¶ Szustowicz 1b.)  In July 2006, Szustowicz reported witnessing illegal misconduct by Brown and Seaborough, namely theft, gambling on duty, and tampering with evidence, which she reported to the PPD's internal anti-corruption investigation team.  (Defs. SOF ¶¶ 75-76.)  Szustowicz was interviewed in connection with Alers' EEOC complaint on January 23, 2007.  (Defs. SOF ¶ 84.)

---

[3]Alers claims that he was prohibited from reporting for CDUovertimeon October 27 and 31, 2008, but Alers had in fact transferred from CDU to the East Detectives Unit by that date.(Defs.SOF ¶ 57 n.1 (citing Alers Dep. (Dkt. No. 62, Exh. 2)21:6-21:1.).Alers also claims he was denied overtime on October 26, 2006; however, while he was not authorized in advance for said overtime, he ultimately was compensated for it.  (Defs. SOF ¶ 59 (erroneously referring to October 13 instead of October 26, 2006) (citing Seaborough Dep. 24:23-25:22).)

[4]The EEOC issued Alers' Right-to-Sue Letter on June 19, 2008.  (Defs.SOF ¶ 71.)

On August 15, 2007, Szustowicz was charged with conduct unbecoming an officer relating to several incidents in which Szustowicz allegedly engaged in racist conduct. (Defs. SOF ¶ 85.) Szustowicz subsequently requested and was granted a transfer out of the CDU, as she declined to work on a particular assignment, and with an officer to whom she was assigned. (Defs. SOF ¶ 87; Pls. SOF ¶ 106.) On January 24, 2008, the PPD's Police Board of Inquiry conducted a hearing relating to the charges brought against Szustowicz. (Pls. SOF ¶ 91.) While represented by her current counsel, Szustowicz pled guilty to two charges and a third was withdrawn; she contends that she was pressured into pleading guilty and denied the opportunity to prepare fully for the hearing. (Defs. SOF ¶ 91; Pls. SOF ¶ 94.) Szustowicz was ultimately suspended for 21 days. (Defs. SOF ¶ 92.) The penalties were imposed by Flacco, Gaitens and Ramsey. (Defs. ¶ 92.)[5]

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to

---

[5]The Second Amended Complaint states that Alers and Szustowicz had cooperated in an investigation against Seaborough and Brown for theft of overtime, "on-duty internet gambling," and activities to cover up said conduct, and alludes to the fact that Flacco, Gaitens and Ramsey were also aware of that assistance when imposing discipline for the internal rule violations. (Pls.' Second Am. Compl. ¶ 51.)

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. An issue is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. *Anderson*, 477 U.S. at 249. In reviewing a motion for summary judgment, the court does not make credibility determinations and "must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV.    DISCUSSION

For purposes of clarity, the Court addresses Plaintiffs' claims in the order that they appear in the Plaintiffs' Second Amended Complaint.

### A.    COUNT I: TITLE VII RACIAL DISCRIMINATION (PLAINTIFFS V. CITY OF PHILADELPHIA)

#### 1. Legal Context

Title VII's anti-discrimination provision makes it unlawful for an employer to discriminate against any individual with respect to "compensation, terms, conditions, or privileges of employment" or to "deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" because of such individual's race. 42 U.S.C. § 2000e–2(a). To prevail under Title VII, the plaintiff's claims must meet the burden-shifting allocation and order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Texas Dept. of Cmty.Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). The plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination by a preponderance of the evidence. *Hicks*, 509 U.S. at 506. Should the plaintiff succeed in proving racial discrimination, the burden of evidence production shifts to the defendant to articulate some legitimate, nondiscriminatory

purpose for its adverse employment actions. *Id.* at 506-07. If the defendant carries this burden, the plaintiff must then prove that the defendant's proffered reasons for the actions taken were not its true reasons, but rather were pretext for the defendant's discriminatory purpose. *Id.*

The "ultimate burden of persuading the trier of facts" rests at all times with the plaintiff. *Burdine*, 450 U.S. at 253. To survive a motion for summary judgment where the defendant-employer has met its evidentiary burden of articulating a legitimate, nondiscriminatory purpose for its actions, the plaintiff must provide direct or circumstantial evidence of pretext with sufficient probative force from which the fact finder could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998).

Actions that violate Title VII may be overt or facially neutral. *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001). Facially neutral conduct need not be accompanied by overt racial harassment to establish a violation: all that is required is the plaintiff demonstrate (1) race or ethnicity was a substantial motivating factor in the adverse employment action; and (2) had the plaintiff been of a different race or ethnicity, the defendant would not have discriminated against the plaintiff. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996).

Title VII racial discrimination claims may be based on intentional discrimination, as indicated by disparate treatment. *Ricci v. DeStefano*, 557 U.S. ---, 129 S. Ct. 2658, 2672 (2009). Such discrimination occurs where an employer treats an individual less favorably than others because of a protected trait. *Id.* (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)). A plaintiff who claims intentional discrimination based on disparate treatment must prove that the defendant had "a discriminatory intent or motive" for the adverse employment

action.  *Id.* (citing *Watson*, 487 U.S. at 986).  Facially neutral employment practices that

disparately treat minorities are "discriminatory in operation" where they are not related to job

performance or the employment in question.  *Id.* at 2672-73 (citing *Griggs v. Duke Power Co.*,

401 U.S. 424, 431-32 (1971)). To establish an intentional discrimination claim where the

defendant-employer has met its burden of establishing a relationship between its practice and the

employment, the plaintiff is required to articulate a legitimate alternative that would serve the

employer's purpose yet result in less discrimination.  *Id.* at 2673 (citing *Albemarle Paper Co. v.

Moody*, 422 U.S. 405, 425 (1975)).

Racial discrimination claims under Title VII are also cognizable when founded upon a

hostile work environment, based on the notion that workplace discrimination can alter the terms

and conditions of a plaintiff's employment.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 64-65 (2006).  To succeed on hostile work environment grounds in a racial

discrimination suit, the plaintiff must prove: (1) he suffered intentional discrimination because of

his race; (2) the discrimination he suffered was severe and pervasive; (3) the discrimination

detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person

of the same race in the same position; and (5) the existence of *respondeat superior* liability.  *See

Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008).  Factors that may indicate an

actionable hostile work environment include "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift

Sys., Inc.*, 510 U.S. 17, 23 (1993).  "[O]ffhanded comments[] and isolated incidents (unless

extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the

conduct must be extreme to amount to a change in the terms and conditions of employment."

*Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citations and internal quotation marks omitted). When ascertaining whether the severity and pervasiveness of alleged discrimination are sufficient to constitute a hostile work environment, the court looks at the totality of the circumstances rather than concentrating on individual incidents. *Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010).

An employer is vicariously liable for racially discriminatory acts by supervisory employees who create a hostile work environment amounting to employment discrimination. *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998). Where a co-worker is the source of alleged harassment, a plaintiff must establish that the employer did not provide reasonable channels for complaints or failed to take appropriate remedial actions once harassment had been alleged. *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001) (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293-94 (3d Cir. 1999)), *abrogated in part on other grounds by Burlington N.*, 548 U.S. at 67.

### 2. Plaintiffs' Claims

Here Plaintiffs allege racial and ethnic discrimination by Defendant City of Philadelphia on the basis of disparate treatment and hostile work environment. *See* Pls.' Second Am. Compl. ¶ 61-62. Plaintiffs claim the City took discriminatory adverse action against Plaintiffs by: (1) failing to remedy, and thus condoning, a hostile work environment permitting ethnic slurs, offensive gags, and the stealing of an officer's handgun; (2) denying overtime hours; (3) changing work assignments; (4) failing to pay for work performed; and (5) "other discriminatory actions." *Id.* ¶ 62. Plaintiffs claim that the City's actions were motivated by an intent to discriminate, and that Plaintiffs suffered because of such adverse actions. *Id.* ¶¶ 62, 64. Defendants counter by claiming that Plaintiffs have failed to meet their burden of establishing

intentional discrimination based on racial animus and of establishing a severe and pervasive hostile work environment. (Defs.Mot.Summ. J. at 10-11.)

Even when viewing all facts in the light most favorable to Plaintiffs, Plaintiffs' employment discrimination claims cannot survive Defendants' summary judgment motion. A reasonable jury could find from the record no evidence of intentionally discriminatory disparate treatment against Plaintiffs because of their race or ethnicity, or of a severe and pervasive hostile work environment. Even if Plaintiffs could prove a *prima facie* case of intentional discrimination or hostile work environment, the City has articulated legitimate, nondiscriminatory purposes for its adverse employment actions; Plaintiffs have not indicated any pretext in the City's conduct. As such, Plaintiffs have not shown any genuine issue of material fact, and Defendants' Motion for Summary Judgment will be granted on Count One.

To prevail in their employment discrimination claim, Plaintiffs must first establish a *prima facie* case that the City (1) discriminated against Plaintiffs with respect to compensation, terms, conditions, or privileges of employment; (2) deprived Plaintiffs of employment opportunities; or (3) otherwise adversely affected Plaintiffs' status as employees because of their race or ethnicity. This claim fails both as an intentional discrimination claim and as a hostile work environment claim.

### a. Intentional Discrimination

There is no evidence from the record to indicate the City overtly discriminated against Plaintiffs. Plaintiffs acknowledge that there is no direct evidence of any hostile comments about Alers' race or ethnicity, and Plaintiffs present no evidence indicating any hostile comments about Szustowicz's race or ethnicity either. Plaintiffs instead rely on facially neutral actions to allege racial discrimination, claiming that the City was aware of but declined to remedy such

discrimination. Plaintiffs assert this conduct by the City was motivated by racial animus, but fail to prove such discriminatory intent for any of the City's employment actions.

Plaintiffs allege that the City exhibited racially motivated discrimination by tolerating the hostile gags of Plaintiffs' co-workers. Defendants Kerwin and Hood placed Alers' desk on milk crates and glued pennies and a battery to the desk, which Alers asserts were derogatory references to his race. Alers claims the City did not investigate this matter but provides no evidence showing a lack of investigation. Defendants, on the other hand, offer evidence that Defendants Jones, Kerwin, and Hood were indeed investigated by the city for these "pranks," and that each was disciplined for his conduct. (Defs. SOF ¶ 66 (citing Seaborough Dep. (Dkt. No. 62, Exh. 1) 46:18-49:13); Defs. SOF ¶ 68 (citing Ramsey Dep. (Dkt. No. 62, Exh. 11) 75:20-76:8).) Although Jones' discipline was later overturned by an arbitrator and the City subsequently settled with Kerwin and Hood (Defs. SOF ¶ 71 (citing Ramsey Dep. 76:6-8)), Plaintiffs cannot demonstrate that the City exhibited discriminatory animus by failing to investigate the allegedly hostile gags.

Alers also asserts that his handgun was stolen from his desk by co-workers, and that the City disparately treated Alers by initiating discipline against him for leaving his firearm in his desk while no other co-worker was disciplined for doing the same. While charges were submitted against Alers for not securing his handgun, Ramsey ultimately withdrew those charges and did not discipline Alers for having his gun stolen. Because he was not disciplined, Alers cannot succeed on an intentional discrimination claim against the City where he suffered no discrimination with respect to compensation, terms, conditions, or privileges of employment, was not deprived of employment opportunities, and was not otherwise adversely affected.

Plaintiffs additionally assert that they were discriminated against by being denied overtime opportunities. Alers claims his denial of overtime opportunities presents proof of intentional discrimination, but he offers no evidence of disparate treatment that others similarly situated were granted overtime opportunities while he was denied such opportunities. Szustowicz presents only evidence that she was denied such opportunities as retaliation for reporting conduct violations by co-workers and for assisting Alers report to the EEOC, not as racial or ethnic discrimination against her. Therefore, Plaintiffs' intentional discrimination claim relating to denial of overtime opportunities fails.

Plaintiffs further allege discriminatory animus was the motivating factor behind the City's change to Plaintiffs' work assignments. Yet there is no evidence in the record that Alers had a change of work assignment or that the changes to Szustowicz's scheduled duty shift and partner were racially motivated; Szustowicz claims only that such changes were motivated by retaliatory aims. Accordingly, Plaintiffs have not carried their *prima facie* burden of proving intentional discrimination influenced a change of their work assignments.

Plaintiffs also claim the City discriminated against them by failing to pay for work performed. Alers asserts that he was denied payment for overtime work that had been approved by Jones, but admits that he was eventually compensated for that overtime through arbitration. An independent arbitrator found PPD policy permits approval of up to two hours of overtime for detectives by a supervisor such as a sergeant, but that a request for additional overtime hours requires approval by a Commanding Officer, here by a supervisory officer with a rank of lieutenant or greater. (Alers Arbitration (Dkt. No. 62, Exh. 14).) Alers has not shown that a Commanding Officer approved any overtime for which he was not compensated, and so his allegation of compensation discrimination cannot succeed. Szustowicz has not provided any

evidence that she worked overtime hours for which she was denied pay, and so her claims cannot succeed here either.

Finally, Plaintiffs assert in a conclusory manner that the City engaged in "other discriminatory actions." However, without any clear inference of intentionally discriminatory Title VII violations, such statement fails to pass muster; it is improper to deny Defendants' summary judgment motion on such grounds.

b. *Hostile Work Environment*

Plaintiffs also fail to prove a *prima facie* case of hostile work environment Title VII violations by the City. First, as noted above, Plaintiffs have not proven that they suffered intentional discrimination based on their race. Second, even if Plaintiffs could prove that they suffered such discrimination, nothing in the record could convince a reasonable jury that the alleged discrimination was severe and pervasive. Plaintiffs admit there is no direct evidence of hostile comments based on their race or ethnicity, and instead rely on only a handful of underwhelming, facially neutral incidents to purport a hostile work environment. Alers notes that on one occasion co-workers placed his desk on milk crates and glued pennies and a battery to his desk, which he claims were derogatory references to his Puerto Rican heritage. He also notes that his handgun was once stolen from his desk and that on one occasion he was denied overtime authorization, alleging both were forms of discrimination against him. Szustowicz asserts that Defendants imposed adverse employment actions against her because of her race or ethnicity, but she offers no evidence of racial discrimination. Such alleged discrimination did not occur frequently or with any degree of severity, and no evidence was provided by Plaintiffs that the alleged discrimination was physically threatening, humiliating, or unreasonably interfered with their work performance. Plaintiffs have thus not carried their burden of proving

that the alleged discrimination was severe and pervasive enough to change the terms and conditions of their employment.

Third, Plaintiffs fail to provide evidence that they were detrimentally affected by any purported discrimination. Alers suffered no adverse employment action resulting from the hostile desk gags perpetuated against him, and he was never disciplined for having his firearm stolen. Alers admits that any overtime work for which he was not paid was never authorized by a Commanding Officer. Szustowicz claims detrimental effects from retaliation only, not from discrimination based on a hostile work environment. With no adverse employment actions taken against them, Plaintiffs cannot establish that they were detrimentally affected by the alleged discrimination.

Fourth, where Plaintiffs themselves did not suffer such detrimental effects, no reasonable person of the same race in the same position would suffer detrimental effects from the alleged conduct. Fifth, although *respondeat superior* liability might otherwise exist here, the City cannot be held liable where Plaintiffs did not suffer any injuries as a result of the allegedly hostile work environment. Furthermore, Plaintiffs have not shown that the City failed to provide adequate avenues for complaint or that it failed to take remedial action. Rather, Plaintiffs attest that they sought relief by complaining to the PPD EEO Unit, the EEOC, and the PHRC, yet Plaintiffs do not claim these offices failed to investigate their claims. Thus Plaintiffs have not established a *prima facie* case of racially discriminatory hostile work environment by a preponderance of the evidence.

Even assuming, *arguendo*, that Plaintiffs could prove such a *prima facie* case, Defendants have articulated legitimate, nondiscriminatory purposes for their employment actions, and Plaintiffs have not alleged or provided evidence of any pretext in the City's conduct.

Consequently, Plaintiffs have not met the burden shifting paradigm set forth in *McDonnell Douglas*, and Defendants' Motion for Summary Judgment will be granted as to Count One.

## B. COUNT II: TITLE VII RETALIATION (PLAINTIFFS V. CITY OF PHILADELPHIA)

Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against any of its employees because the employee directly "opposed" any race or gender discrimination by the employer, or because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" of race or gender discrimination by the employer.  42 U.S.C. § 2000e–3(a); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 273 (2009).  To establish Title VII retaliation violations, a plaintiff-employee must demonstrate that (1) the plaintiff engaged in Title VII-protected activity; (2) the defendant-employer took adverse employment action against the plaintiff; and (3) there was a causal nexus between the plaintiff's participation in the protected activity and the defendant's adverse action.   *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)).  In retaliation claims, the standard for an adverse employment action is not limited to conduct that affects the terms or conditions of employment, but is expanded to include any action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (citing *Burlington N.*, 548 U.S. at 68).  "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence;" rather, retaliation is actionable only where it produces material injury or harm sufficient to deter opposition to or reporting of discriminatory employment practices.  *Burlington N.*, 548 U.S. at 67-68.  A defendant-employer is subject to *respondeat superior* liability to a victimized employee where the employee suffers a tangible material adverse employment action

by superiors, such as undesirable reassignment, demotion, or discharge. *See Fornicoia v. Haemonetics Corp.*, 131 F. App'x 867, 870-71 (3d Cir. 2005) (citing *Faragher*, 524 U.S. at 807-08).

Causation of retaliation may be adduced through evidence that illustrates both "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period," *Hussein*, 466 F. App'x at 112 (internal quotation marks omitted), but timing alone will not support a finding of causation unless "unusually suggestive," *Morrissey v. Luzerne Cnty. Cmty. Coll.*, 117 F. App'x 809, 816 (3d Cir. 2004) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (1997)). A court may also consider whether the record in its entirety suggests retaliatory animus by the defendant. *Hussein*, 466 F. App'x at 112 (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)). Absent direct evidence of retaliation for opposing or reporting discriminatory employment action, a plaintiff may prove retaliatory animus indirectly with "(1) evidence of an intervening pattern of antagonism by the defendant, or (2) evidence of the defendant's inconsistent explanation of its actions, i.e., that its explanation is pretextual." *Burton v. MBNA Am. Bank, N.A.*, No. C.A.03-915 GMS, 2005 WL 1463533, at *5 (D. Del. June 22, 2005) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000)).).

If the plaintiff proves a *prima facie* retaliation claim, the *McDonnell Douglas* burden-shifting analysis applies in which the defendant is then obligated to advance a legitimate, non-retaliatory purpose for its adverse employment action; if it does so, the burden shifts back to the plaintiff to prove the defendant's adverse action was pretext for retaliation. *Hussein*, 466 F. App'x at 112 (citing *Moore*, 461 F.3d at 342); *see also McDonnell Douglas*, 411 U.S. at 802.

Where the plaintiff fails to raise a genuine issue of material fact for each element of its retaliation claim, summary judgment should be granted for the defendant. *Krouse*, 126 F.3d at 501.

Viewing all facts in light most favorable to the non-movants, Alers' Title VII retaliation claim against the City cannot survive a motion for summary judgment, but Szustowicz's claim can. While Plaintiffs have established that they participated in Title VII-protected activities, Alers has not sufficiently demonstrated that Defendants took retaliatory adverse employment action against him. Szustowicz, on the other hand, has shown sufficiently retaliatory adverse actions against her, and a causal nexus between her participation in protected activities and the City's employment actions. Defendants' Motion for Summary Judgment will thus be granted for Count II on Alers' claim, but will be denied for Count II on Szustowicz's claim.

Defendants concede that Plaintiffs participated in activity protected by Title VII. Alers reported race discrimination to Seaborough and filed a complaint of race discrimination with EEOC, and Szustowicz assisted Alers with and was interviewed for his EEOC complaint. Szustowicz filed her own sex discrimination, race discrimination, and retaliation EEOC claims and suffered a materially adverse employment action in receiving a 21-day suspension with loss of pay. Defendants deny, however, a causal connection between such action and any retaliatory animus for Szustowicz's Title VII-protected activities. Because the incidents of alleged retaliation are different for each Plaintiff, the Court analyzes Alers' and Szustowicz's Count II claims separately.

### 1. Alers

The retaliatory adverse employment actions that Plaintiffs claim to have suffered include: "a) the start of internal rule violation investigations; b) loss of pay; c) initiation of discipline for alleged work rule violations; d) denial of a fair hearing process on the alleged work rule

violations; e) denial of employment opportunities in pay, shift assignments, and/or other areas, such as (but not limited to) work assignments; and f) exclusion of social activities on and off the job." Pls.' Second Am. Compl. ¶ 69. Alers' Title VII retaliation claims include: (1) the initiation of two internal rule violation investigations (one by Seaborough for Alers not having secured his firearm, and another for Alers entering his own vacation time into the PPD's computer system); (2) loss of pay for overtime he worked on October 26, 2006 and loss of overtime pay opportunities after Alers transferred to a different department; (3) initiation of discipline for Alers not having secured his firearm; (4) denial of a fair hearing process on the alleged violation of Alers not having secured his firearm; (5) denial of work assignments from October 27 to October 30, 2008, and Seaborough's denial of Alers' request to transfer; and (6) exclusion from social activities on and off the job. Alers has failed to support any of these claims by providing evidence of a genuine issue of material fact, and thus his Title VII retaliation claims must fail.

According to the facts as alleged by Plaintiffs, Alers first mentioned to Defendants that he had suffered racial discrimination when he spoke with Seaborough on November 1, 2006. (Alers Dep. (Dkt. No. 62, Exh. 2) 164:5-6.) Although Alers had reported the desk gags and stolen gun to Jones immediately after the incidents occurred in October 2006, Alers did not mention during those reports that he believed these actions were racially motivated. Therefore the first instance of Alers' activity that was protected by Title VII's anti-retaliation provision occurred when he spoke with Seaborough; any cognizable alleged retaliation against Alers for opposing employment discrimination could only have occurred on or after that date. Additionally, none of the adverse actions that Alers suffered prior to November 1, 2006 dissuaded him from making a charge of discrimination to Seaborough or subsequently to the

EEOC and the PHRC, nor would they have dissuaded a reasonable person from making such charges. Any prior adverse actions do not meet the standard of actionability for retaliation claims.

As for Alers' first Title VII retaliation claim, Seaborough initiated a work rule violation investigation and discipline against Alers for failing to secure his handgun. Alers has pled no facts that demonstrate he suffered material injury or harm from the investigation or initiation of discipline. Instead, Alers has admitted that despite Seaborough's investigation, he never suffered any actual discipline or penalty for having his gun stolen, because Ramsey withdrew those charges and did not discipline Alers. Similarly, Alers has expounded no evidence that he suffered any harm from the investigation for entering his vacation time into the Department's computer system, and he has asserted that he was never disciplined for this incident. Even if Alers had suffered material injury and could substantiate a causal link between his protected activities and the investigations against him, Alers has alleged neither a pattern of antagonism by Defendants in the intervening period, nor inconsistent explanations by Defendants for their actions. The temporal proximity of these investigations to Alers' reporting of discrimination is not by itself unusually suggestive of retaliation, and Alers cannot claim denial of fair hearings for alleged violations where the outcomes were favorable to him. Consequently, Alers has not carried the burden of sufficiently proving his first, third, or fourth retaliation claims under Count II.

Alers also has not carried the burden of proving his second, fifth, or sixth retaliation claims under Count II. As for his second claim, Alers' overtime authorization for October 26, 2006, was denied by Brown prior to November 1, 2006, and so could not have been retaliation for Alers' reporting of discrimination on November 1. Although Alers was denied overtime

authorization by Seaborough subsequent to November 1, an independent arbitrator later awarded

Alers overtime pay for two of the four overtime hours he worked, and so he did not suffer

material injury for those hours.  Assuming the additional two hours of lost overtime caused Alers

to suffer materially, Alers has evinced neither an intervening pattern of antagonism by

Defendants nor Defendants' inconsistent explanation of Seaborough's refusal to authorize those

hours.  Thus, this loss of pay claim fails.

Likewise, Alers cannot support his retaliation claim for loss of overtime pay

opportunities after transferring to a different department.  Alers was not forced to transfer from

the CDU; in fact, he was denied a transfer request by Seaborough and only obtained a transfer

after seeking one out himself.  Alers claims fewer overtime opportunities exist in his new

department and a concomitant reduction in pay opportunities.  While Alers asserts the transfer

was made under duress, he cannot claim retaliation by transfer where Defendants took no

employment action to transfer him and instead attempted to deny his transfer.  Alers has not

proven a *prima facie* case of retaliation in his second claim under Count II.

As for his fifth retaliation claim under Count II, Alers has alleged that Defendants denied

him work opportunities while he was stationed at the CDU from October 27 to October 30,

2008.[6]  However, the record clearly indicates that Alers had already transferred from and was no

longer working at the CDU on these dates, and so no such denial could possibly have occurred.

Granting Plaintiffs the benefit of the doubt and surmising their intended claim instead covers the

dates from October 27 to October 30, 2006, Alers still has not established a cognizable

retaliation claim because such denial of work opportunity occurred prior to November 1, 2006.

Alers also asserts that Seaborough denied his request to transfer to another department, but he

---

[6]Alers makes the same erroneous assertion in Plaintiffs' Complaint, First Amended Complaint, and
Second Amended Complaint.

was granted a transfer by March 2007 and has not evidenced any harm suffered due to Seaborough's denial. Moreover, Plaintiffs have blankly alleged that Defendants denied Alers other overtime opportunities, but have provided no evidence detailing these purported denials. As such, Alers' claims fails here.

Lastly, Plaintiffs adamantly deny that Alers ever socialized with other members of his detective squad, but have stated that Alers did socialize with members of other units of the PPD who were his friends. Therefore, exclusion from social activities on and off the job could only be materially adverse if Alers desired to be included in such activities. Alers, however, has provided no evidence indicating any desire to socialize with his CDU co-workers, and so this retaliation claim by Alers is meritless.

Looking at the record in its entirety, no suggestion can be found that the City's alleged retaliatory animus was sufficient to dissuade Alers, or any reasonable person, from making or supporting his charge of discrimination. While the record may demonstrate petty slights, minor annoyances, and simple lack of good manners, Alers has not proven that he suffered any material injury from retaliation. Assuming any of his retaliation claims were found to have caused such harm, Alers has failed to sufficiently indicate a causal connection between harms suffered and his Title VII-protected activity. Defendants' Motion for Summary Judgment will therefore be granted on Plaintiff Alers' Count II claims.

### 2. Szustowicz

Plaintiff Szustowicz's Title VII retaliation claims include: (1) the start of an internal rule violation investigation against Szustowicz for allegedly making derogatory racial remarks about Seaborough, and for obtaining copies of Daily Attendance Reports ("DARs"); (2) loss of pay during Szustowicz's 21-day suspension, and loss of overtime pay opportunities in her new post

after being transferred; (3) initiation of 21-day suspension as discipline for Szustowicz allegedly making derogatory racial remarks about Seaborough, and for obtaining copies of DARs; (4) denial of a fair hearing for Szustowicz during the investigation of her alleged work rule violations; (5) denial of work opportunities, forced use of accumulated sick and vacation time, and reassignment to partner with an officer with whom Szustowicz did not want to work; and (6) exclusion from social activities on and off the job. Szustowicz has demonstrated adverse employment actions in her first four claims, and where she has so proven, she has also shown a causal nexus between her participation in Title VII-protected activity and the City's adverse actions. Defendants have alleged legitimate, non-retaliatory purposes for these adverse employment actions, but Szustowicz has subsequently supported her claims of pretext with evidence of retaliation. Consequently, Szustowicz has carried her burden of establishing a genuine issue of material fact in her Title VII retaliation claims, and Defendants' Motion for Summary Judgment will be denied on Plaintiff Szustowicz's Count II.

According to the facts as alleged by Plaintiffs, Szustowicz first discussed Alers' issues of racial discrimination and recommended he file a complaint with the EEOC after learning Alers' gun had been stolen in late October or early November 2006.[7] (Alers Dep. 168:2-14, 170:9-13; Szustowicz Dep. (Dkt. No. 62, Exh. 5) 51:15-21.) This initial discussion with Alers is the first instance of Szustowicz's activity protected by Title VII's anti-retaliation provision; any cognizable retaliation against Szustowicz for participating in Alers' case could only have occurred after that time. Additionally, Szustowicz filed her own charges with the EEOC and the PHRC against Defendants Brown, Seaborough, and the City of Philadelphia for sex discrimination, race discrimination, and retaliation on March 27, 2007. Therefore, any claimed

---

[7]There is a factual discrepancy in Plaintiffs' depositions as to whether the initial conversation between Alers and Szustowicz occurred in late October or early November 2006, but this discrepancy is not material to Szustowicz's claims.

adverse employment actions against Szustowicz could have been retaliation for her participation in Alers' race discrimination charges, or for her own opposition to discrimination.

Defendants do not dispute that Szustowicz engaged in Title VII-protected activity by participating in Alers' race discrimination case, or that she suffered adverse employment action by being disciplined for allegedly using racial slurs. Defendants dispute only the causal nexus between Szustowicz's involvement with Alers, and the City's adverse actions against her. Defendants' argument is persuasive here. Szustowicz assisted Alers in filing his EEOC complaint in November 2006, yet she was not investigated for using racial slurs until August 2007. These events are not temporally proximate; rather, their distance in time suggests no causal link exists between Szustowicz's aid to Alers and the discipline she suffered.

However, Szustowicz filed her own complaints of discrimination with the EEOC and the PHRC, and Plaintiffs have demonstrated retaliation by the City for this activity. Szustowicz filed these complaints on March 27, 2007, and she notified Seaborough of her filings just over three months later in July 2007. (Szustowicz Dep. 154:15-155:4.) In August 2007, after Szustowicz had transferred out of the CDU to Northeast Detectives Unit, Seaborough initiated an internal rule violation investigation for Szustowicz allegedly making derogatory racial remarks about Seaborough, and for obtaining copies of Brown's DARs. (Szustowicz Dep. 155:5-19.) Szustowicz denies ever making derogatory racial remarks, and asserts she pled guilty to these charges under duress because she did not believe she would receive a fair hearing. Szustowicz was subsequently sentenced to a 21-day suspension for conduct unbecoming an officer. This suspension and concomitant loss of pay caused material financial harm to Szustowicz that could dissuade a reasonable worker from making or supporting a charge of discrimination. Whether

these actions by Defendants were adverse employment actions with a direct, causal connection to Szustowicz's filing of her EEOC complaint is a genuine issue of material fact.

Although there is no direct evidence of retaliation against Szustowicz for opposing Title VII-protected activity, the temporal proximity between her activity and the alleged retaliation appears unusually suggestive. It was barely one month from the time Seaborough learned of Szustowicz's EEOC and PHRC complaints to the time he began an internal work rule investigation against Szustowicz. Szustowicz had already transferred and was no longer working for Seaborough at the time Seaborough began his investigation. Moreover, Szustowicz has denied that she made racial comments directed at Seaborough, notwithstanding her prior admission therof, which would render Seaborough's charges here without merit. This suggests the investigation initiated by Seaborough could have been motivated by retaliatory animus--a question of credibility and fact best left to the jury.

Plaintiffs have also suggested a pattern of antagonism by Defendants against Szustowicz. After Szustowicz assisted Alers with his EEOC complaint, Defendants reassigned Szustowicz to work with a new partner she was known to despise, despite the availability of other potential partners. Szustowicz asserts she was denied a fair Police Board of Inquiry hearing by Defendants for the charges brought against her by Seaborough. Szustowicz was refused a continuance on her hearing for the resolution of her EEOC complaint, an accommodation that was afforded Alers as to his hearing, and she was denied a continuance to obtain a critical witness to testify in her favor at her hearing. Upon consideration of the investigation against her, the resulting 21-day suspension, and her subsequent loss of pay due to said suspension, a reasonable jury could find that Szustowicz's superiors retaliated against her for supporting Alers in his claims and for filing her own discrimination charges. Whether the proffered retaliatory

harassment suffered by Szustowicz reached a threshold level of actionability is a genuine issue of material fact.

In opposition to Szustowicz's claims, Defendants have articulated legitimate, non-retaliatory reasons for their actions. They claim that Szustowicz was investigated and disciplined for her use of derogatory racial comments about Seaborough, and for her surreptitious entry into Brown's DARs. Szustowicz has clearly asserted, however, that although Defendants purport proper purpose for their actions, their true motivation was retaliation against her for supporting Alers, and for opposing discrimination herself. Although it is a close call, the motivation behind Defendants' adverse actions is a proper jury inquiry. Taking all facts in light most favorable to Plaintiffs, Szustowicz has carried the burden of proving a *prima facie* case of retaliation as a genuine issue of material fact. Therefore Defendants' Motion for Summary Judgment on Szustowicz's Count Two will be denied.

### C. COUNT III: § 1983[8] RETALIATION, FIRST AMENDMENT FREE SPEECH AND AMENDMENT CLAUSES (PLAINTIFFS V. CITY OF PHILADELPHIA, RAMSEY, GAITTENS, FLACCO, ABRAMS, SEABOROUGH, BROWN, JONES, HOOD, AND KERWIN)[9]

---

[8]42 U.S.C. § 1983 provides the following in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

[9]Plaintiffs' Second Amended Complaint fails to specify whether the individual Defendants are being sued in their personal or official capacities. In cases where a plaintiff neglects to specify whether officials are being sued in their official or personal capacity, the court must "interpret the pleading to ascertain what the plaintiff should have stated specifically." *Barber v. Sheppleman*, Civ. A. No. 10-3620, 2011 WL 4465840, at *2 (E.D. Pa. Sept. 26, 2011) (citing *Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988)). "[C]ourts are to look to the course of proceedings' to determine whether a plaintiff is suing state officials in their official or individual capacities when the plaintiff has not explicitly stated this in the Complaint." *Pena v. Div. of Child & Family Servs.*, Civ. No. 08-1168, 20120 WL 3982321, at *5 (D.N.J. Oct. 8, 2010) (quoting *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)). Here, Plaintiffs seek punitive damages, and punitive damages cannot be recovered from defendants in their official capacities. *See Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007) (citing *Gregory*, 843 F.2d at 120). Accordingly, based on the course of these proceedings and the demand for punitive damages, this memorandum will assume that the claims against the individual defendants are brought against them in their personal capacities. The Court also notes that Defendants' Motion for Summary Judgment appears to treat the claims this way

To establish a § 1983 First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant retaliated against the plaintiff in a manner that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) a causal nexus existed between the protected activity and the retaliation. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003)). Where a public employee claims First Amendment retaliation by a government employer, the plaintiff-employee must demonstrate that he "spoke as a citizen on a matter of public concern" for his activity to be protected by the First Amendment. *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). A public employee is not automatically privileged in speaking as a citizen on a matter of public concern against a defendant-employer's retaliation; rather, a court must balance the plaintiff's First Amendment rights with the defendant's interest in promoting efficient public services performed through its employees. *Id.* (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)). Where there is more than one defendant, a plaintiff must show that each individual defendant participated in or acquiesced to the alleged retaliation. *Smith v. Cent. Dauphin Sch. Dist.*, 355 F. App'x 658, 667 (3d Cir. 2009).

Anti-retaliation speech by a plaintiff claiming First Amendment violations is protected as a matter of public concern if it relates to political, social, or community concerns, not where it is "purely personal" as a private grievance. *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003).

without objection from Plaintiffs in their Memo in Opposition. *See* Defs.'Mot. Summ. J. 40-42; Pl.'s Opp., *passim*. However, punitive damages are not permitted against municipalities under Section 1983, and so will not be assessed against the City should Plaintiffs prevail. *See Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011).

For the purposes of a § 1983 retaliation claim under the First Amendment's Free Speech and Petition Clauses, an employee's petition may be deemed a matter of public concern depending on "the content, form, and context of the petition, as revealed by the whole record." *Borough of Duryea, Pa.*, 131 S. Ct. at 2501 (citing *Connick*, 461 U.S. at 147-48). The lodging of a complaint in a public forum may indicate the matter is one of public concern, whereas the lodging of a complaint using only internal grievance procedures may indicate the employee does not seek to advance a political, social, or community concern. *Id.*

Police misconduct is generally a matter of public concern, but for a public employee's anti-retaliation speech regarding police misconduct to fall under the protective umbrella of the First Amendment, such speech must be made "as a citizen." *Kline v. Valentic*, 283 F. App'x 913, 916 (3d Cir. 2008) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)). In *Kline*, the Third Circuit Court of Appeals affirmed dismissal of the plaintiff police officer's First Amendment retaliation claim that he was not promoted for protesting an internal affairs investigation against him. *Id.* at 916-17. Although the plaintiff contended his complaints of police misconduct were protected by the First Amendment as a matter of public concern, the court found he was speaking not "as a citizen," but as a police officer because *his* reputation and career were at stake, he had not complained in any public forum, and his actions in no way indicated that he desired the public know about his complaints. *Id*.

First Amendment retaliation claims are actionable where the alleged retaliatory conduct would deter a person of ordinary firmness from exercising his First Amendment rights, even if the plaintiff cannot establish that the retaliation had an adverse effect on the terms of his employment. *McKee v. Hart*, 436 F.3d 165, 169-70 (3d Cir. 2006) (citing *Suppan v. Dadonna,* 203 F.3d 228, 234-35 (3d Cir. 2000)). Retaliatory actions that violate an employee's First

Amendment rights may be adverse where they relate to "promotion, transfer, recall and hiring," not where they are simply "criticism, false accusations, or verbal reprimands." *Brennan*, 350 F.3d at 419 (citing *Suarez Corp. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). The low standard for such retaliation claims merely requires a plaintiff demonstrate that the retaliatory conduct by the defendant was more than *de minimis*. *Smith*, 355 F. App'x at 668. Acts that individually fall below the minimum threshold may still be actionable in the aggregate provided the plaintiff can show a campaign of harassment that is sufficiently substantial in its cumulative effect. *Id.*

A causal nexus exists between a plaintiff's protected activity and a defendant's retaliation where the plaintiff's speech was a substantial or motivating factor for the alleged conduct. *Id.* To demonstrate the requisite causal link, the plaintiff typically must show either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. (ex rel. Jean W.) v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Without such proof, the plaintiff must evidence that causation can be inferred by the trier of fact from the entire record. *Id.* (citing *Farrell*, 206 F.3d at 281).

Where a plaintiff has met his burden of demonstrating a defendant's adverse retaliation was causally connected to protected activity, the defendant may defeat the plaintiff's claims by showing that identical adverse action would have been taken by the defendant in the absence of protected activity. *Smith*, 355 F. App'x at 667 (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir.2005)). If the defendant cannot demonstrate the same adverse action would have occurred, the plaintiff is entitled to be put in the same position in which he would have been had the defendant not retaliated against him. *Suppan,* 203 F.3d at 236.

Viewing all facts in light most favorable to Plaintiffs, Defendants' Motion for Summary Judgment will be granted on Count III. Plaintiffs have not demonstrated they were speaking as citizens on matters of public concern when they spoke out about misconduct by Defendants, and accordingly their speech is not protected by the First Amendment for § 1983 retaliation claims.

Alers complained to Seaborough about the harassment he faced, and shortly thereafter he filed a report of misconduct with the EEOC that was investigated by police internal affairs. As in *Kline*, only Alers' own employment terms and condition were at stake, he did not complain in any public forum, and his actions in no way indicated that he desired the public know about his complaints. *See Armbruster v. Cavanaugh*, Civ. No. 09-1006, 2010 WL 816385, at *4 (Mar. 9, 2010) (Jones, J.) (plaintiff did not engage in speech by private citizen when responding to order issued in course of official police business), *aff'd*, 410 Fed. App'x 564 (3d Cir. 2011). Even if Alers had spoken as a citizen on a matter of public concern, as discussed *supra*, Alers did not suffer adverse retaliation: Alers was not disciplined for the theft of his handgun or for entering his vacation time into Department's computer system. Based on individual actions by Defendants and by consulting the record as a whole, Alers did not face adverse retaliation sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Alers has not carried the burden of showing a genuine issue of material fact in his Count III claims.

Szustowicz aided Alers in his complaints to the EEOC, filed her own complaints with the EEOC and PHRC, and reported police misconduct by Defendants in the form of overtime theft and on-the-job gambling to internal affairs. In opposing discrimination against her co-Plaintiff and herself, Szustowicz did not demonstrate a desire to advance political, social, or community concerns, instead alleging violations and private afflictions exclusively via internal grievance procedures. Although her reports of overtime theft and work-time gambling may have been

matters of public concern, Plaintiffs admit such violations were never submitted to external public sources for investigation or prosecution. As such, Szustowicz has not shown she spoke "as a citizen" in these complaints. Even assuming Szustowicz could demonstrate that (1) her speech was intended to inform the public of police misconduct; (2) Defendants' retaliatory acts were enough to meet § 1983's low threshold as adverse actions for First Amendment retaliation claims; and (3) a causal nexus existed between Szustowicz's protected activity and Defendants' retaliation, Defendants have convincingly indicated that identical adverse action would have been taken anyway. Defendants assert that Szustowicz was reassigned for "loyalty" issues and that she incurred her suspension after an investigation determined she had used racial slurs. Plaintiffs, on the other hand, have not produced evidence tending to show these adverse actions would have been different in the absence of protected activity. Plaintiffs have not sufficiently shown a genuine issue of material fact in these claims, and therefore Defendants' Motion for Summary Judgment on Count III will be granted.

### D. COUNT IV: § 1983 DISCRIMINATION (PLAINTIFFS V. CITY OF PHILADELPHIA, RAMSEY, GAITTENS, FLACCO, ABRAMS, SEABOROUGH, BROWN, JONES, HOOD, AND KERWIN)

To establish a § 1983 discrimination claim, a plaintiff must demonstrate a violation of a constitutionally-secured right committed by a defendant acting under color of state law. *See* 42 U.S.C. § 1983; *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007). The Fourteenth Amendment's Equal Protection Clause prohibits the denial of equal protection of the law to any person, "which is essentially a direction that all persons similarly situated should be treated alike." *Id.* at 164 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Thus, to claim § 1983 discrimination based on a denial of equal protection, a plaintiff must prove that the defendant, acting under color of state law, treated the plaintiff differently

from other individuals similarly situated, and "the different treatment was improperly motivated by discrimination." *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x 211, 219 (3d Cir. 2005); *see also Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (noting that a plaintiff must present evidence of disparate treatment to prevail on an equal protection claim); *Chambers (ex rel. Chambers) v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (recognizing that a successful § 1983 equal protection claim requires a plaintiff to prove the existence of purposeful discrimination). A plaintiff may establish a *prima facie* case of discrimination through direct evidence only if such evidence is "so revealing of discriminatory animus that it is not necessary to rely on any presumption" to conclude that unlawful discrimination existed. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778–79 (3d Cir. 1994), *abrogated in part on other grounds by Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235–36 (3d Cir. 1999). In the absence of such direct evidence, § 1983 discrimination claims are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *Moussa v. Pa. Dept. of Pub. Welfare*, 413 F. App'x 484, 486 (3d Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802.

The elements of employment discrimination under 42 U.S.C. § 1981 are identical to the elements of Title VII employment discrimination claims. *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 445 n.2 (3d Cir. 2011) (citing *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999))[10]. However, while a plaintiff is afforded extensive rights under § 1981, this statute provides no remedy against constitutional violations by state actors. *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009). Rather, § 1983 provides the express cause of action for damages as the exclusive remedy for § 1981 violations. *Id.* at 120-21.

---

[10]Although not readily apparent, Plaintiffs bury § 1981 violation allegations within their Count IV § 1983 claims, and these allegations will be discussed here as well.

Here, Plaintiffs have failed to prove a genuine issue of material fact in their § 1983 discrimination claims. Plaintiffs claim that they were treated differently by Defendants because of their race and ethnicity, but provide no evidence of the treatment of others similarly situated. Alers relies exclusively on his prior arguments under Count I to support his claims here. With no evidence of how others were treated or how he was treated differently from them, a claim of disparate treatment cannot reasonably support a finding of equal protection discrimination violations. Szustowicz similarly fails to demonstrate how others similarly situated were treated, or that she received disparate treatment from them.[11]

Additionally, Plaintiffs' § 1981 claims fail for the same reason: they solely rely on their Title VII claims for support. Because Plaintiffs did not carry their burden of showing a genuine issue of material fact in their Title VII claims, and the elements of employment discrimination under § 1981 are identical to those under Title VII, Plaintiffs have not carried their burden in establishing their § 1981 claims. Consequently, Defendants' Motion for Summary Judgment will be granted for Count IV.

### E. COUNT V: § 1983 DISCRIMINATION, *MONELL* LIABILITY (PLAINTIFFS V. CITY OF PHILADELPHIA)

As Plaintiffs acknowledge, this count was dismissed by the Court from the First Amended Complaint as duplicative of Count III, and therefore was not pleaded in the Second Amended Complaint.

---

[11]Szustowicz's claims here are at best unintelligible and at worst preposterous. Her first claim here is that the false accusation by Seaborough of Szustowicz being a racist is itself a form of racial discrimination. (Pl.'s Opp. at 22.) Szustowicz provides no legal or rational basis for making such an assertion, nor can she. Her second claim here is simply indecipherable: "Even though the Defendants allege that Szustowicz was racist, asserts that she was and is not racist and that the administrative finding and her plea of guilty in the administrative hearing was based on fraud and, thus, not preclusive and she was not properly disciplined, the essence of her Complaint[.]" *Id.* Still, the Court has attempted to identify Szustowicz's actual claims in order to provide proper relief to the parties.

### F. COUNT VI: FAIR LABOR STANDARDS ACT OF 1938 (ALERS V. CITY OF PHILADELPHIA)

The FLSA requires an employer to compensate its employees for work in excess of forty hours per week at a rate of one and one-half times the employees' standard wages. 29 U.S.C. § 207(a)(1); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 578-79 (2000) (recognizing that FLSA coverage extends with full force to all state and local employees). Employers who violate the FLSA's overtime provisions by failing to appropriately compensate employees may be liable for payment of both unpaid overtime wages and an equivalent amount of liquidated damages. 29 U.S.C. § 213(b); *Brooks v. Vill.of Ridgefield Park*, 185 F.3d 130, 134 (3d Cir. 1999). "The award of liquidated damages, however, is not always automatic": if the employer demonstrates its actions were in good faith and on reasonable grounds for believing it did not violate the FLSA, the court may in its discretion award no or only partial liquidated damages according to the applicable statutory limit. *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2010 WL 1644066, at *8 (D.N.J. Apr. 22, 2010).

Plaintiff-employees asserting FLSA claims bear the burden of proving they performed work for which they were not paid. *Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003). To recover for such uncompensated overtime work, a plaintiff must demonstrate that the defendant-employer had either actual or constructive knowledge of the plaintiff's overtime work. *Barvinchak v. Ind. Reg'l Med. Ctr.*, Civ. A. No. 3:2006-69, 2007 WL 2903911, at *12 (W.D. Pa. Sept. 28, 2007). "[A]n employee satisfies the burden of proof if he or she produces enough evidence to permit a court to make a fair and reasonable inference that the employee performed work for which he or she received improper compensation." *Rong Chen v. Century Buffet & Rest.*, Civ. A. No. 09-1687, 2012 WL 113539, at *6 (D.N.J. Jan. 12, 2012) (internal

quotation marks omitted). If the plaintiff sufficiently adduces evidence that he worked overtime hours for which he was not compensated, the burden of proof shifts to the defendant to provide evidence of the exact amount of time worked, or evidence that otherwise negates the inference to be gleaned from the plaintiff's evidence. *Id.* Where an employer does not desire that an employee work overtime, the employer is responsible to make every effort to prevent the employee from working overtime. *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 662 (W.D. Pa. 2011).

Plaintiffs base their sparse FLSA claims entirely on a Second Circuit Court of Appeals decision that is not binding on this Court, *Holzapfel v. Town of Newburgh, N.Y. See* 145 F.3d 516, 521 (2d Cir. 1998).[12] However, courts in the Third Circuit have adopted *Holzapfel*'s approach for determining whether the overtime claimed by a plaintiff is compensable based on an employer's knowledge of the performed work. *See, e.g., Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 504 (3d Cir. 2009); *Krause v. Manalapan Twp.*, No. 09–2871, 2011 WL 4594202, at *5 (D.N.J. Sept. 30, 2011); *Falzo v. Cnty. of Essex*, Civ. A. No. 03-1922, 2008 WL 2064811, at *5 (D.N.J. May 14, 2008). Even under the framework for analyzing FLSA claims set forth in *Holzapfel*, Plaintiffs cannot prevail on their claims here.

In *Holzapfel*, the Second Circuit Court of Appeals remanded for new jury instructions in favor of the plaintiff, a K-9 police officer who had performed duties of care for his assigned police dog well in excess of the standard forty-hour work week prescribed by the FLSA. 145 F.3d at 528. The court there found that because the plaintiff's employer had knowledge that such

---

[12]As discussed *supra*, Plaintiffs' Second Amended Complaint claims that Alers was not compensated for six hours of overtime performed on October 27 and 31, 2008, well after he had already transferred from CDU. Yet all of Plaintiffs' evidence suggests the date of unpaid overtime was October 26, 2006, while he still worked at CDU and for which he went to arbitration to retrieve uncompensated overtime pay. Giving Plaintiffs the benefit of the doubt, this memorandum assumes October 26, 2006, to be the date in question for Plaintiffs' allegations of unpaid overtime.

duties exceeding the maximum work week were being performed routinely, such activity was considered "compensable work under the FLSA [because] the employee's activity [was] controlled or required by the employer." *Id.* However, the *Holzapfel* court was careful to note that "[w]hile an employer must pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Id.* at 524 (citation omitted). Furthermore, the court there found that no reasonable jury could deem an employee's extra time above forty hours per week as compensable work where his employer "did not authorize the assignment." *Id.* at 527.

Plaintiffs have not met their burden of proving Alers performed compensable work for which he has not been paid. Alers worked six hours beyond his tour of duty on October 26, 2006, asserting that these hours were approved by his supervisor Jones but acknowledging that neither of his Commanding Officers, Brown and Seaborough, approved them. Yet Plaintiffs have not adduced any evidence to rebut PPD policy that permitted approval of up to two hours of overtime for detectives by a supervisor but that required approval by a Commanding Officer for any additional overtime work. This policy was clearly implemented by PPD as an effort to prevent its employees from working overtime that had not been properly authorized. The independent arbitrator who adjudicated Alers' overtime dispute found that his Commanding Officers had not authorized his overtime, and consequently only granted Alers compensation for the two hours of overtime that had been authorized by Jones. The additional overtime hours for which Alers seeks payment are not compensable work under *Holzapfel's* FLSA rubric because Alers' Commanding Officers did not authorize the assignment. Even if Alers could establish the hours in question were work under the FLSA, the City has persuasively demonstrated it acted in good faith that it was not violating the FLSA: Alers was compensated for his two overtime hours

approved by Jones.  This negates Alers' attempt to evince a FLSA violation, and thus the City is not liable for payment of unpaid overtime wages or for an equivalent amount of liquidated damages.  Accordingly, Defendants' Motion for Summary Judgment will be granted for Count VI.

### G.  COUNT VII: STATE CLAIM: PENNSYLVANIA HUMAN RELATIONS ACT (PLAINTIFFS V. CITY OF PHILADELPHIA, RAMSEY, GAITTENS, FLACCO, ABRAMS, SEABOROUGH, BROWN, JONES, HOOD, AND KERWIN)

Claims under the PHRA are to be analyzed under the same legal standard as Title VII claims.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008).  Thus, to establish employment discrimination claims under the PHRA, a plaintiff must demonstrate by a preponderance of the evidence that his employer discriminated against him with respect to the terms or conditions of his employment, deprived him of employment opportunities, or otherwise adversely affected his status as an employee because of his race.  *See* 42 U.S.C. § 2000e-2(a).  To establish retaliation claims under the PHRA, a plaintiff must show that (1) he engaged in PHRA-protected activity; (2) the defendant took adverse retaliatory action against the plaintiff; and (3) there was a causal nexus between the plaintiff's participation in the protected activity and the defendant's adverse retaliation.  *See Hussein*, 466 F. App'x at 111-12 (noting retaliation claim analysis is identical under PHRA and Title VII, and detailing Title VII retaliation claim requirements).  The lack of evidence to support Plaintiffs' Title VII employment discrimination and retaliation claims in Counts I through IV is fatal to their PHRA claims here.  Plaintiffs have presented no additional evidence to bolster their PHRA claims, and therefore Defendants' Motion for Summary Judgment will be granted as to Count VII.

## H. COUNT VII[2][13]: PENNSYLVANIA MINIMUM WAGE ACT (ALERS V. CITY OF PHILADELPHIA, SEABOROUGH, AND BROWN)

The PMWA parallels the FLSA in requiring employers to compensate employees for overtime hours worked, and has an identical standard of liability as the FLSA in overtime violation claims. *See Baum v. Astrazeneca LP,* 372 F. App'x 246, 248-49 (3d Cir. 2010) (applying analysis of overtime compensation violation claims under PMWA and FLSA interchangeably); *Messmer v. Colors In Bloom, Inc.*, 67 F. App'x 719, 721 n.1 (3d Cir. 2003) (characterizing the standards of liability under PMWA and FLSA as identical); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 925-26 (W.D. Pa. 2011) ("Generally, the PMWA and the FLSA each require an employer to pay overtime to employees for hours worked over forty in a workweek.").[14] Thus, plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid, *see Sniscak*, 86 F. App'x at 487 (discussing the framework for bringing FLSA claims), and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work. *See Barvinchak*, 2007 WL 2903911, at *12 (recognizing PMWA and FLSA claims as equivalent, and noting that plaintiff must prove defendant had knowledge of overtime work to prevail under FLSA). However, a plaintiff should not be awarded overtime compensation where the defendant did not authorize the overtime assignment. *Holzapfel*, 145 F.3d at 527 (analyzing FLSA claim requirements).

---

[13]Plaintiffs have improperly numbered the current count as Count VII, although it is the eighth count in their Second Amended Complaint. This memorandum refers to it as Count VII[2] for uniformity.
[14]Although Plaintiffs' Second Amended Complaint asserts overtime violations under PMWA, their Opposition to Defendants' Motion for Summary Judgment fails to discuss their PMWA claims or to counter Defendants' arguments here. As such, Plaintiffs have effectively waived their PMWA claims and conceded to Defendants' Motion for Summary Judgment as to CountVII[2]. Accordingly, Defendants' Motion will be granted for Count VII[2]; the Court endeavors to provide the proper law and analysis under the PMWA nonetheless.

Plaintiffs have adduced no evidence in their PMWA claims beyond that which they presented in their FLSA claims.[15] Alers was not authorized by a Commanding Officer to work overtime on October 26, 2006, and he was compensated by an arbitrator for the overtime that was authorized by a supervisor. Defendants therefore did not violate PMWA, and accordingly, their Motion for Summary Judgment will be granted for Count VII[2].

## I. COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (PLAINTIFFS V. RAMSEY, GAITTENS, FLACCO, ABRAMS, SEABOROUGH, BROWN, JONES, HOOD, AND KERWIN)

Plaintiffs' IIED claims are governed by Pennsylvania state law, which recognizes the IIED standard as described in Restatement (Second) of Torts § 46. *See Brown v. Muhlenberg Twp.,* 269 F.3d 205, 217 (3d Cir. 2001); Restatement (Second) of Torts § 46 (1965). Generally, the Pennsylvania's Workers' Compensation Act ("WCA") provides the exclusive remedy for injuries allegedly sustained during a plaintiff's employment and bars IIED claims that arise from the plaintiff's employment. *See Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997); 77 Pa. Stat. Ann. § 481(a) (West 2012). WCA preemption extends to personal attacks that develop from work-related events, and injuries that occur on an employer's premises are presumptively work-related. *Jackson v. Lehigh Valley Physicians Grp.*, Civ. A. No. 08-3043, 2009 WL 229756, at *7 (E.D. Pa. Jan. 30, 2009) (citing several Third Circuit cases where tWCA barred IIED claims because the alleged harassment, including false accusations and unfair discipline, was closely tied to job-related activities); *see also Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 n.16(3d Cir. 1999) ("Pennsylvania law . . . extend[s] workers' compensation preemption to personal animosity that develops from work-related events."). However, under limited circumstances, a plaintiff may pursue a "personal animus" IIED claim

---

[15]Plaintiffs again incorrectly seek an award of overtime pay for October 27 and 31, 2008, while only presenting evidence that Alers worked and was not paid for overtime on October 26, 2006. Regardless of this error, Plaintiffs' PMWA claims fail here.

that arises in the work context where the harm was motivated by personal reasons and was sufficiently unrelated to the plaintiff's employment. *Williams v. U.S. Airways, Inc.*, Civ. A. No. 06-4797, 2007 WL 2667981, at *2 (E.D. Pa. Sept. 5, 2007). "For an act to fall within the personal animus exception, it 'cannot be one which would normally be expected in the workplace.'" *Jackson*, 2009 WL 229756, at *7 (quoting *Hettler v. Zany Brainy, Inc.*, No.Civ.A. 99–3879, 2000 WL 1468550, at *5 (E.D. Pa. Sept. 27, 2000)). To establish such an IIED claim, a plaintiff must show that "the alleged motivation behind the offending act [was] individualized, not just aimed at every member of a particular class." *Id.* at *8.

Courts in this jurisdiction have routinely allowed personal animus IIED claims to prevail in the employment context on assertions of racial harassment by co-workers or supervisors. *Williams*, 2007 WL 2667981, at *2 (citing multiple decisions in the Third Circuit where IIED claims were not preempted by WCA). However, "finding that a claim is not preempted by the WCA does not necessarily render it cognizable." *Id.* at *3. Where the WCA does not bar IIED claims, a plaintiff still bears the burden of establishing the defendant's liability. *Id.*

To recover for IIED, a plaintiff must show: (1) extreme and outrageous conduct by the tortfeasor; (2) that was either intentional or reckless; and (3) that caused severe emotional distress to the plaintiff. *Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 668 (M.D. Pa. 2009), *aff'd*, 465 F. App'x 132 (3d Cir. 2012) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987). Outrageous conduct is that which is so atrocious and utterly intolerable that it goes beyond all possible bounds of decency in a civilized society. *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (citing Restatement (Second) of Torts § 46 cmt. d (1965)). As a threshold matter, a court must first determine if the alleged conduct rises to a level that could reasonably be considered so extreme and outrageous as to permit redress. *Slater*, 613 F. Supp.

2d at 668.  "Indeed, it is 'extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for [IIED].'"  *Williams*, 2007 WL 2667981, at *3 (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)); *see, e.g., Belverena v. Cent. Parking Sys., Inc.*, No. Civ.A. 05-4364, 2005 WL 2850343, at *2 (E.D. Pa. Oct. 31, 2005) (deciding outrageousness prong not met where plaintiff alleged employer set him up, wrongfully accused him of stealing, and fired him because of his age); *Ceesay v. Miller, Mason & Dickenson*, CIV. A. No. 90-2800, 1990 WL 121218, at *6-7 (E.D. Pa. Aug. 15, 1990) (holding plaintiff could not recover on IIED claim despite that defendant "repeatedly disparaged the plaintiff on the basis of her sex, race, and parental status").  If a plaintiff persuades the court that the defendant's conduct meets the adequate degree of heinousness and that the conduct was intentional or reckless, the plaintiff must then support his assertion of emotional distress with expert medical evidence to attest to the severity of the plaintiff's distress.  *Hill v. City of Phila.*, Civ. A. No. 05-6574, 2008 WL 2622907, at *10 (E.D. Pa. June 30, 2008), *aff'd*, 331 F. App'x 138 (3d Cir. 2009); *see also Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged [IIED].").

Taking all facts alleged by Plaintiffs as true, Alers' claims here do not meet the IIED standard for recovery, and Szustowicz's claims here are barred by the WCA; accordingly, Defendants' Motion for Summary Judgment will be granted on Count VIII.  While the WCA generally preempts personal attacks that develop from work-related events, Defendants' actions against Alers appear to meet the personal animus IIED exception.  Even though Alers has only alleged attacks perpetuated by Defendants on PPD premises, the hostile desk gags and stealing of his gun would not ordinarily be expected in the workplace and arguably are sufficiently unrelated

to Alers' employment to qualify for this exception.  Alers asserts that Defendants' acts were motivated by personal reasons and were individualized attacks against him as the only Hispanic employee working during his shift at the CDU.  Defendants recognize that the WCA usually bars IIED claims against employers, but have not argued that it bars Alers' claims here.  As such, Alers' claims meet the personal animus IIED exception for the WCA.

Although Alers' claims meet the WCA exception permitting recovery for IIED claims, he has not established Defendants' liability here and so he cannot recover on these claims.  While Defendants' attacks on Alers may have been undesirable, no reasonable jury could find their actions so atrocious and utterly intolerable in nature that they went beyond all possible bounds of decency in a civilized society.  Turning Alers' desk around, placing it on milk crates, and gluing pennies and a battery to it do not evoke the kind of response necessary to be deemed intolerable or extreme.  The stealing of Alers' gun may be detestable, but it is not so atrocious that it elicits feelings of outrage.  Alers admits that Defendants never used racial epithets against him, and IIED claims have failed even where a plaintiff was repeatedly disparaged by racist remarks.  Even if Alers could convince a jury that the attacks he suffered were sufficiently outrageous and extreme, he has presented no medical evidence to support his assertions that he suffered emotional distress.[16]  Without such evidence, Alers simply cannot prevail on these claims.

Szustowicz's IIED claims are preempted by the WCA, barring her recovery. Szustowicz alleges that Seaborough wrongfully accused Szustowicz of making racist comments.  She claims that (1) Defendants misrepresented facts at her disciplinary hearing; (2) Defendants denied her the benefit of a witness who would have testified on her behalf; 3) Defendants coerced her guilty plea; and (4) Defendants unfairly disciplined because she was falsely accused.  Szustowicz also

---

[16]**Error! Main Document Only.**Plaintiffs argue that "[i]t is axiomatic that emotional distress can be shown [without] and does not require independent medical evidence."  However, in the Third Circuit, a showing of emotional distress does require independent medical evidence.  *Bougher*, 882 F.2d at 80.

asserts that Defendants forced her to work with a partner who harassed her and who could not adequately protect her on duty, and that she was compelled to transfer because of all of the harms she faced.  Szustowicz alleges that these actions by Defendants caused her to  suffer emotional distress.  Despite these assertions, Szustowicz's claims do not meet the personal animus IIED exception.  Other courts in the Third Circuit have found false accusations, being set up by an employer, and unfair discipline fail to meet the personal animus exception, especially when the alleged grievances occurred at work and were job-related.  Even assuming Defendants' acts were for personal reasons, animosity that develops from work-related events is still preempted by the WCA when related to a plaintiff's employment.  The actions that Szustowicz suffered all took place in the context of her work and are normally to be expected in the workplace; consequently, her IIED claims are barred by the WCA.  Moreover, even if Szustowicz's claims met the personal animus exception, she has not shown that Defendants' actions were sufficiently outrageous and extreme to meet the first IIED prong, and she has provided no expert witness evidence that she suffered emotional distress.  Because Plaintiffs have failed to demonstrate cognizable IIED claims, Defendants' Motion for Summary Judgment will be granted for Count VIII.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted on Plaintiffs' Count I, Alers' Count II, Plaintiffs' Counts III, IV, V, VI, VII, VII[2], and VIII, and will be denied on Szustowicz's Count II.  An appropriate Order follows.